## Flinn *v.* Barber *et al.*

*Bill in Equity to enforce Vendor's Lien.*

1. *Vendor's lien; what not bar to enforcement of.*—In the absence of any agreement to the contrary, the vendor retains a lien on lands for the unpaid purchase-money, though he has made an absolute conveyance in fee to the vendee, and put him in possession; and the fact that the debt, as a mere legal demand, is barred by the statute of limitations, is no bar to the enforcement of the lien in equity.

2. *Same.*—Whether or not an administrator, who became a creditor of decedent in his life-time, need or can present a claim against the estate, is not decided; but the failure of a vendor of land, who afterwards becomes administrator of the vendee, to bring the debt for the purchase-money into the administration account, or to file or present the same as a claim against the estate, will not bar his right to enforce his vendor's lien in equity.—MANNING, J., dissenting.

APPEAL from Chancery Court of Montgomery.

Heard before Hon. H. AUSTILL.

The appellant, Bunberry Flinn, filed this bill, on the 29th day of March, 1876, against Mrs. M. L. Barber, John G.

Barber, and Josephine Flinn, to enforce a vendor's lien for the unpaid purchase-money. Mrs. Barber, before her marriage with her present husband, had been married to Watson Flinn, a son of appellant, and Josephine was a child of her first marriage.

The case made by the pleadings and proof was as follows: Appellant on the sixth day of October, 1865, sold the lands in question to his son, Watson, for the sum of $3,200, and conveyed to him by warranty-deed in fee simple, the conveyance reciting full payment of the purchase-money. Watson Flinn immediately entered into possession, and so continued up to the time of his death. On the day of the execution of the deed to him, Watson Flinn executed his note to appellant for the purchase-money, payable one day after date.

Watson Flinn paid $890 on said note, and died in September, 1867, leaving the balance due. After said Watson's death, and on the 28th day of September, 1867, appellant became his administrator, but the possession and control of the land remained in Mrs. Barber, up to the filing of the bill.

On the 21st day of July, 1869, appellant made an annual settlement of the estate of said Watson, by which it appeared that the estate was indebted to him in the sum of $1,711. On the second day of December, 1869, appellant filed his accounts and vouchers for a final settlement. The account, as passed and allowed, showed that the receipts and disbursements exactly corresponded. In neither of these settlements was anything claimed by Bunberry Flinn on account of Watson Flinn's indebtedness for the land, and he had never received or been paid anything on account thereof, except the payment made by said Watson Flinn in his lifetime. The debt due for the land and the other debts made the estate largely insolvent, though it was not formally declared insolvent. The note of Watson Flinn was never brought in any way into the administration accounts, or filed in the Probate Court, or otherwise presented as a claim against the estate.

Some time after Watson Flinn's death, his widow, as the preponderance of the testimony shows, bargained with said Bunberry Flinn for the purchase of the lands, and her brother, John W. Hereford, paid $1,000 for her on account of the purchase-money agreed on. Appellant claimed, however, that the payment was made on account of the original indebtedness of said Watson Flinn, deceased. The testimony shows that Mrs. Barber afterwards refused to com-

plete the purchase, and recovered back the amount paid thereon.

The appellees set up, among other defenses, that the debt sought to be enforced, was barred by the statute of non-claims, and also by the statute of limitations of six years.

The chancellor was of opinion that as the note had not been presented or brought into the administration, or in any way filed against the estate, the debt evidenced by it was extinguished by operation of the statute of non-claim, and there was of consequence no debt in existence, to support the lien asserted ; and he therefore dismissed the bill.

This decree is now assigned as error.

D. S. TROY, for appellant.

RICE, JONES & WILEY, contra.

STONE, J.—We think the weight of the testimony establishes the proposition that Mrs. Barber, then Flinn, paid the thousand dollars through her brother, Hereford, not in part payment of her deceased husband's purchase, but in part payment of an original purchase made by herself.   We think the testimony also shows that the note of Watson Flinn, payable to Bunberry Flinn, his father, was given as the purchase-price of the land described in the bill.   Long before the purchase by Mrs. M. Louisa Flinn, now Mrs. Barber, and in the life-time of Watson Flinn, her former husband, Bunberry Flinn sold and conveyed the lands to Watson Flinn, and thus divested himself of the legal title thereto. He retained only an equitable right to enforce the vendor's lien.   Having only such equitable right, he could not sell and convey such a title to Mrs. Barber ; and he had no power or authority to contract with her for a sale and conveyance of the land.   The testimony informs us that Mrs. Barber has sued Bunberry Flinn for the thousand dollars thus paid him, and has recovered a judgment therefor.   This leaves the purchase-money note, $3,200, given by Watson Flinn, wholly unpaid, save the credit of eight hundred and ninety dollars.   The bill, as at present framed, admits the payment on the note of the eight hundred and ninety dollars, and also of the one thousand dollars, paid by Mrs. Barber.   Two defenses to this bill are relied on :   First, that before the bill was filed, the note of $3,200 was barred by the statute of limitations of six years.   The ruling of this court has uniformly been that a vendor of lands, even though he makes a

[Flinn v. Barber.]

conveyance, has a lien thereon for unpaid purchase-money, unless there is something in the contract which repels the idea that a lien was intended to be retained. And that lien will be preserved, even against a sub-purchaser of the property with notice. It rests on the principle, handed down to us from the mother country, that it is unconscionable that one should purchase and hold the lands of another, without paying the purchase-price. And this lien, we have held, survives the bar of the debt, as a mere legal demand. This results necessarily from the fact that there is a lien.—*Relfe v. Relfe*, 34 Ala. 500, and numerous authorities cited; *Bankhead v. Owen*, 60 Ala. 457; *Bizzell v. Nix*, ib. 281.

We hold that the vendor's lien was not destroyed by the six years statutory bar of the debt.

The second defense relied on is, that the claim sued on was not presented to the administrator, or filed in the Probate Court, as a claim against the estate, within eighteen months after the grant of letters of administration. Bunberry Flinn, the payee, was the administrator of the estate, and the record shows that this claim was not brought into the administration. The estate was in fact insolvent, and the testimony tends to show that the entire assets were required to pay the debts of the estate that were brought in and allowed. It is thus shown that no part of this debt, other than the $890, has been paid. Without intending in this case to decide whether an administrator need or can present a claim against the estate he represents, we are satisfied his failure to do so does not bar his equitable lien as a vendor.—*Locke v. Palmer*, 26 Ala. 312; *Inge v. Boardman*, 2 Ala. 331; *Duvall v. McLoskey*, 1 Ala. 738.

The decree of the chancellor is reversed, and the cause remanded, to be proceeded in according to the principles of this opinion.

MANNING, J., dissented, referring to his dissenting opinion in *Bizzell v. Nix*, 60 Ala. 284.