American Home Assurance Company, as subrogee for Thomas J. Wetherell, appeals from a summary judgment in favor of Renea Gaylor, as personal representative of the estate of Charles Hillman, deceased. We reverse and remand.
 I.
On July 7, 2000, Charles Hillman was driving his sport-utility vehicle when he collided with the rear of an 18-wheel tractor-trailer truck driven by Thomas J. Wetherell and owned by J.B. Hunt Transport, Inc. Charles, his wife, Vicki, and their daughter, Katie, died as a result of the accident. On July 14, 2000, Gaylor, Charles's mother-in-law, was appointed personal representative of Charles's estate, and the court opened the estate for probate. Notice of Gaylor's appointment was published in the Mobile Press Register on July 27, 2000, August 3, 2000, and August 10, 2000.
As a result of the accident, the tractor-trailer truck driven by Wetherell sustained approximately $14,000 of damage. J.B. Hunt filed a claim with Alfa Mutual Insurance Company, Hillman's automobile insurance carrier, and Alfa settled that claim. Although the accident report indicated that Wetherell had not been injured in the accident, he filed for and received workers' compensation benefits through his employer, J.B. Hunt. American Home Assurance Company ("American Home") was J.B. Hunt's workers' compensation carrier. On July 3, 2002, American Home sued Gaylor, as personal representative of Charles's estate, seeking reimbursement of sums paid for Wetherell's workers' compensation benefits. Gaylor argued that the claim was time-barred by §43-2-350, Ala. Code 1975, because it had not been filed within six months after Gaylor was granted letters testamentary.[1]
Gaylor moved for a summary judgment, which the trial court granted. American Home appeals.
 II.
American Home admits that its claim was not filed within the six-month period set out in § 43-2-350, Ala. Code 1975. *Page 658 
However, American Home argues that under § 43-2-61, Ala. Code 1975, Gaylor had a duty to provide it with actual notice of the probate proceedings because, it says, it is a "reasonably ascertainable creditor."[2] Section 43-2-60, Ala. Code 1975, provides, in relevant part:
 "The personal representative must give notice of the appointment, stating the name of the deceased, the day on which letters were granted, by what court, stating the county and notifying all persons having claims against the estate to present the same within the time allowed by law or that the same will be barred. The notice of appointment,
 "(1) For actual notice as required in section 43-2-61(1), must be given as soon as practicable after a creditor's identification is known. . . ."
Section 43-2-61, Ala. Code 1975, provides, in relevant part:
 "Notice, as prescribed in section 43-2-60, must be given:
 "(1) By first-class mail addressed to their last known address, or by other mechanism reasonably calculated to provide actual notice, to all persons, firms, and corporations having claims against the decedent, who are known or who are reasonably ascertainable by the personal representative within six months from the grant of letters. . . ."
Thus, the issue before this Court is whether Wetherell or American Home, as Wetherell's subrogee, was a reasonably ascertainable creditor.
In Tulsa Professional Collection Services, Inc. v. Pope,485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), the Supreme Court of the United States applied the principles of Mullane v.Central Hanover Bank Trust Co., 339 U.S. 306, 70 S.Ct. 652,94 L.Ed. 865 (1950), and Mennonite Board of Missions v. Adams,462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), to probate proceedings and held that the Oklahoma nonclaim statute violated the Due Process Clause of the Fourteenth Amendment:
 "As the Court indicated in Mennonite, all that the executor or executrix need do is make `reasonably diligent efforts' to uncover the identities of creditors. For creditors who are not `reasonably ascertainable,' publication notice can suffice. Nor is everyone who may conceivably have a claim properly considered a creditor entitled to actual notice. Here, as in Mullane, it is reasonable to dispense with actual notice to those with mere `conjectural' claims."
485 U.S. at 490, 108 S.Ct. 1340 (citations omitted). This Court has applied the holding in Pope in other cases. See JeffersonFed. Sav. Loan Ass'n of Birmingham v. Clark, 540 So.2d 61
(Ala. 1989), and Carter v. Beck, 598 So.2d 1390 (Ala. 1992).
In Carter v. Beck, 598 So.2d 1390 (Ala. 1992), William Carter, Jr., was injured as the result of modifications Tom Vaughn Tractor Company made to a tractor Carter purchased from Vaughn Tractor Company. Carter was injured on July 15, 1989, while he was operating the tractor. Thomas Vaughn died on February 27, 1990. On February 26, 1991, Carter, through his attorney, informed Vaughn Tractor Company of Carter's injury. After that, an insurance adjuster for Vaughn Tractor Company telephoned Carter's attorney, and they spoke on several occasions. *Page 659 
However, the insurance adjuster did not inform Carter's attorney of Thomas Vaughn's death. On July 15, 1991, Carter sued Thomas Vaughn d/b/a Tom Vaughn Tractor Company. The trial court entered a summary judgment in favor of the administratrix of Vaughn's estate on the ground that Carter had not filed his claim within six months of the grant of letters testamentary as required by §43-2-350, Ala. Code 1975.
Carter argued that his claim was not barred because he said he had not received notice of Vaughn's death and of the administration proceedings; that the administratrix had a duty to provide him with actual notice of the administration proceedings; and that constructive notice violated his due-process rights. This Court stated that the administratrix "was under a duty to provide actual notice to Carter only if she knew of Carter's claim or had a reasonable means of ascertaining the existence of his claim." Carter, 598 So.2d at 1391, citing Jefferson Fed.Sav. Loan Ass'n of Birmingham v. Clark, supra. This Court further stated:
 "The record shows that Carter did not notify anyone associated with Vaughn or his company until February 26, 1991, more than six months after the grant of letters of administration to [the administratrix], that he had suffered a personal injury as the result of an alleged defect in a tractor purchased from Vaughn. However, it is possible that [the administratrix] could have learned of Carter's claim from a source other than Carter or his attorney or could have obtained from such a source information from which she could have reasonably identified Carter as a potential claimant against Vaughn's estate. Consequently, because [the administratrix] presented no evidence to eliminate this possibility, we cannot hold, under our standard for reviewing summary judgments, that [the administratrix] neither knew nor had any reasonable means of ascertaining the existence of Carter's claim within six months after she was issued letters of administration and, thus, that she was entitled to a judgment as a matter of law."
598 So.2d at 1391. This Court reversed the summary judgment.
In Carter, this Court concluded that there was a possibility that the administratrix had actual knowledge of the claim and that the administratrix had not eliminated that possibility. American Home argues in this case that it was a reasonably ascertainable creditor because Gaylor knew that Wetherell was driving the tractor-trailer truck involved in the accident, and she "should have been on notice that the collision was significant enough to have caused injury to Mr. Wetherell and she should have investigated this possibility." Gaylor counters that American Home was not a reasonably ascertainable creditor because the accident report indicates that Wetherell was not injured, a fact confirmed by the insurance adjuster who handled the property-damage claim for the tractor-trailer truck, as evidenced by the failure of the reports of Alfa Mutual Insurance Company to indicate that Wetherell was injured. American Home responds that one of those reports states that a bodily-injury claim had not yet been made and recommends issuing a draft for the property-damage claim and securing a release of all claims. American Home argues that this indicates that Alfa did not want to inquire into the possibility that Wetherell had suffered any personal injuries, but wanted to obtain a release of all claims as soon as possible.
Gaylor distinguishes this case from Carter on the basis that the administratrix in Carter presented "no evidence to eliminate the possibility that she could have learned of the potential creditor's claim." Gaylor asserts that she stated in her affidavit filed *Page 660 
in support of her summary-judgment motion that she did not have actual knowledge of the claim and that she did not have "any other information that would make the status of American Home Assurance Company as a potential creditor reasonably ascertainable." However, she did not indicate that she had no
information that would have made "the status of American Home Assurance Company as a potential creditor reasonably ascertainable." In fact, in her affidavit Gaylor states only, "I was not aware that Thomas J. Wetherell had been injured in any way and, in fact, it was my understanding that he was not injured in the accident." Her statement that she understood that Wetherell had not been injured does not reveal the basis for that understanding, nor is it proof that she took any steps to eliminate the possibility that he had been injured.[3]
In Carter, this Court stated:
 "Contrary to Carter's suggestion, [the administratrix] was under no legal duty to give actual notice to all of Vaughn's previous customers who had purchased a modified tractor from Vaughn, on the assumption that one or more of them might have had a personal injury claim against Vaughn's estate based on an alleged defect created by the modification. Imposition of such a broad duty of ascertaining potential claimants would create an unreasonable burden on personal representatives and, thus, would be inconsistent with the intent of the legislature in providing for the `speedy, safe, and definitive settlement of estates.'"
598 So.2d at 1391 n. 2 (citing Motley v. Battle, 368 So.2d 20,22 (Ala. 1979)). This Court concluded in Carter that there was a possibility that the administratrix knew of the potential claim against the estate and that the administratrix had not eliminated that possibility.
In the present case, Gaylor did eliminate the possibility that she knew of the potential claim against Charles's estate; however, the fact that the accident caused the deaths of three persons and approximately $14,000 in damage to the tractor-trailer truck driven by Wetherell and the fact that the administratrix was aware of the accident created a duty requiring Gaylor to inquire into the possibility of a claim against Charles's estate by Wetherell. See Carter, 598 So.2d at 1391 ("Thus, in the present case, [the administratrix] was under a duty to provide actual notice to Carter only if she knew of Carter's claim or had a reasonable means of ascertaining the existence of his claim."), citing Jefferson Fed. Sav. LoanAss'n of Birmingham v. Clark, supra.
Gaylor's affidavit does not foreclose the existence of a reasonable means by which she could have ascertained whether Wetherell had a claim. The accident report listed Wetherell's name, address, and telephone number. Thus, Gaylor had a *Page 661 
"reasonable means of ascertaining the existence of a claim."Carter, 598 So.2d at 1391.
 III.
Because under the facts of this case Gaylor had a duty to inquire into the possibility of a claim by Wetherell and because Gaylor failed to demonstrate that she did not have a reasonable means of ascertaining whether Wetherell had a claim against the estate, we reverse the trial court's summary judgment and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] Section 43-2-350, Ala. Code 1975, provides, in relevant part:
 "(a) All claims against the estate of a decedent, held by the personal representative of the decedent or by an assignee or transferee of the personal representative, or in which the personal representative has an interest, whether due or to become due, must be presented within six months after the grant of letters, or within five months from the date of the first publication of notice, whichever is the later to occur, provided however, that any creditor entitled to actual notice as prescribed in section 43-2-61 must be allowed thirty days after notice within which to present the claim, by filing the claims, or statement thereof, verified by affidavit, in the office of the judge of probate, in all respects as provided by section 43-2-352. All claims not so presented and filed are forever barred, and the payment or allowance thereof is prohibited."
[2] American Home argues that Wetherell was a reasonably ascertainable creditor and that, as Wetherell's insurer, American Home has the right of subrogation. See Allstate Ins. Co. v.Amerisure Ins. Cos., 603 So.2d 961, 966 (Ala. 1992) (stating "it is well established that the party claiming entitlement to subrogation `steps into the shoes' of the party allegedly responsible for the obligations paid").
[3] The trial court concluded that American Home was not a reasonably ascertainable creditor and entered a summary judgment in favor of Gaylor. The trial court found that Gaylor did not have actual notice of a potential claim until May 8, 2002, and that Gaylor
 "did not have reasonable means of ascertaining the existence of a claim by either Thomas J. Wetherell or American Home Assurance Company within six months of the granting of Letters Testamentary. The accident report indicated that Thomas J. Wetherell was not injured in the accident and was not taken to any medical facility for treatment. In addition, the investigation by the adjusters for the liability insurance carrier for Charles Horton Hillman further indicated that there was no bodily injury claim being asserted by Thomas J. Wetherell."
The trial court also found that "[t]here is no evidence before the Court that Renea R. Gaylor knew or had any reasonable means of ascertaining the existence of a claim by either Thomas J. Wetherell or American Home Assurance Company within six months after she was issued Letters Testamentary."